```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
                                  :
JAMES BROWN,                      :
                                  :
                 Plaintiff,       :     01 Civ 10013 (WHP)
                                  :
        -against-                 :     MEMORANDUM & ORDER
                                  :
CARL KOENIGSMANN, M.D.,           :
s/h/a DR. CARL KOENIGSMANN,       :
Medical Director of Green Haven   :
Correctional Facility,            :
                                  :
                 Defendant.       :
                                  :
---------------------------------X
```

WILLIAM H. PAULEY III, District Judge:

  Plaintiff James Brown ("Brown") brings this federal civil rights action alleging deliberate indifference to serious medical needs under 42 U.S.C. § 1983 against Defendant Carl Koenigsmann M.D. ("Dr. Koenigsmann"). Dr. Koenigsmann moves for summary judgment. For the following reasons, Dr. Koenigsmann's motion is granted.

## BACKGROUND

  The following facts are not in dispute. From January 1992 to August 1996, Brown was incarcerated at Green Haven Correctional Facility ("Green Haven"). Thereafter, he was transferred to the Regional Medical Unit at Coxsackie Correctional Facility ("Coxsackie RMU") where he remained until his return to Green Haven in March 2001. (Defendant's Rule 56.1 Statement dated March 14, 2007 ("Dft. 56.1 Stmt.") ¶¶ 1-2.) On May 7, 2008, Brown was released on parole. (Plaintiff's Response to Dft. 56.1 Stmt. dated June 14, 2009 ("Pl. 56.1 Resp.") at 1.)

Dr. Koenigsmann is a Regional Medical Director of the New York State Department of Corrections Services ("DOCS"). (Declaration of Dr. Carl J. Koenigsmann dated June 10, 2004 ("Koenigsmann Decl.") ¶ 2.) Prior to 2003, he served as the Facility Health Services Director for Green Haven. (Koenigsmann Decl. ¶ 2.)

In 1996, Brown's left eye was surgically removed at Westchester Medical Center as a result of a fungal infection. (Dft. 56.1 Stmt. ¶ 2.) After that surgery, Brown was sent to Coxsackie RMU, where he was diagnosed with glaucoma in his right eye. (Dft. 56.1 Stmt. ¶ 3.) Brown received at least two surgical procedures for his glaucoma: an ectropian repair performed on July 6, 2000 by Dr. Sai Gandham, an ophthalmologist at Albany Medical Center and at least one "laser surgery." (Dft. 56.1 Stmt. ¶¶ 4, 8; Deposition of James Brown dated July 20, 2006 ("Brown Dep.") at 17-20; Koenigsmann Decl. ¶ 15.)

After the laser surgery, Brown claims an ophthalmologist at Albany Medical Center advised him that his right eye was not improving and that he would eventually go blind. (Dft. 56.1 Stmt. ¶ 7; Brown Dep. at 20.) According to Brown, the ophthalmologist recommended a "Trabeailectomy Irisecyomy." (Dft. 56.1 Stmt. ¶ 7; Brown Dep. 20-22, 27.) The parties agree that the procedure described as a "Trabeailectomy Irisecyomy," is really two separate procedures, a trabeculectomy and a peripheral iridectomy. (Pl. 56.1 Resp. at 1, ¶ 3, 5, 8-1-.)

On July 17, 2000, Dr. Gandham performed a trabeculectomy—a surgical drainage procedure intended to relieve the pressure in the eye resulting from glaucoma—on Brown's right eye. (Gandham Decl. ¶ 5.) During the trabeculectomy, Dr. Gandham also performed a peripheral iridectomy—removal of a small portion of the iris to allow drainage from the trabeculectomy. (Dft. 56.1 Stmt. ¶¶ 8-9; Gandham Decl. ¶ 6.) Brown does not dispute that the

-2-

trabeculectomy and peripheral iridectomy were performed, but asserts they are only temporary measures and need to be repeated, especially for African-Americans with diabetes. (Pl. 56.1 Resp. ¶¶ 8-9, 12-14.)

The parties dispute whether Brown spoke with Dr. Koenigsmann about a trabeculectomy and peripheral iridectomy after he was returned to Green Haven. (Dft. 56.1 Stmt. ¶ 11; Brown Dep. at 26-30; Koenigsmann Decl. ¶ 16.) According to Brown, Dr. Koenigsmann denied his request for the procedures and ignored his request to meet with a specialist. (Brown Dep. at 26-30, 60; Brown Sworn and Notarized Letter to the Court dated July 14, 2009 ("Brown Letter") at 2.) Brown also claims that Dr. Koenigsmann authorized a laser surgery to treat the cataract in his right eye, which was ineffective and harmful. (Brown Letter at 2.)

DOCS's medical records reflect that Brown received treatment from ophthalmologists at Green Haven and Westchester Medical Center after he was returned to Green Haven. (Dft. 56.1 Stmt ¶ 12.) None of those specialists recommended surgery. (Dft. 56.1 Stmt ¶ 13.)

## DISCUSSION

I. Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Davis v Blige, 505 F.3d 90, 97 (2d Cir. 2007). The burden of demonstrating the absence of any genuine dispute as to a material fact

trabeculectomy and peripheral iridectomy were performed, but asserts they are only temporary measures and need to be repeated, especially for African-Americans with diabetes. (Pl. 56.1 Resp. ¶¶ 8-9, 12-14.)

The parties dispute whether Brown spoke with Dr. Koenigsmann about a trabeculectomy and peripheral iridectomy after he was returned to Green Haven. (Dft. 56.1 Stmt. ¶ 11; Brown Dep. at 26-30; Koenigsmann Decl. ¶ 16.) According to Brown, Dr. Koenigsmann denied his request for the procedures and ignored his request to meet with a specialist. (Brown Dep. at 26-30, 60; Brown Sworn and Notarized Letter to the Court dated July 14, 2009 ("Brown Letter") at 2.) Brown also claims that Dr. Koenigsmann authorized a laser surgery to treat the cataract in his right eye, which was ineffective and harmful. (Brown Letter at 2.)

DOCS's medical records reflect that Brown received treatment from ophthalmologists at Green Haven and Westchester Medical Center after he was returned to Green Haven. (Dft. 56.1 Stmt ¶ 12.) None of those specialists recommended surgery. (Dft. 56.1 Stmt ¶ 13.)

## DISCUSSION

I. <u>Legal Standard</u>

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986); <u>Davis v Blige</u>, 505 F.3d 90, 97 (2d Cir. 2007). The burden of demonstrating the absence of any genuine dispute as to a material fact

rests with the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255; Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005).

II. Eighth Amendment

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with deliberate indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). This standard contains both objective and subjective elements. Smith v. Carpenter, 316 F.3d 178, 183 (2d Cir. 2003).

A plaintiff must demonstrate, inter alia, that "a particular defendant 'knows of and disregards an excessive risk to inmate health and safety.'" Brock v. Wright, 315 F.3d 158, 164 (2d Cir. 2003)(quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998). "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim for medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106. In addition, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance, 143 F.3d at 703.

While Brown contends that Dr. Koenigsmann improperly denied his requests concerning a trabeculectomy and peripheral iridectomy, it is undisputed that the requested procedures were performed on July 17, 2000 at Albany Medical Center. Although Brown argues that he should have received the procedure again, there is no evidence that any treating specialist informed Brown or Dr. Koenigsmann that Brown required additional procedures. To the extent Brown challenges the sufficiency of the treatment of his right eye, those complaints do not give rise to an Eighth Amendment claim. See Chance, 143 F.3d at 703. Accordingly, the claims against Dr. Koenigsmann are dismissed.

## CONCLUSION

For the foregoing reasons, Dr. Koenigsmann's motion for summary judgment (Docket No. 70) is granted. The Clerk of the Court is directed to mark the case as closed.

Dated: August 11, 2009
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Copies mailed to:*

James Brown
1616 Lincoln Place
Brooklyn, NY 11233-5103
*Plaintiff Pro Se*

Donald Nowve, Esq.
Assistant Attorney General
Office of the Attorney General of the State of New York
120 Broadway, 24th Fl.
New York, NY 10271
*Counsel for Defendant*